UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LINWOOD WRIGHT,                              :
                                             :
                Petitioner,                  :     **MEMORANDUM AND ORDER**
                                             :     03-CV-4956 (DLI)
        -against-                            :
                                             :
D. LA CLAIR, Superintendent,                 :
                                             :
                                             :
                Respondent.                  :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Petitioner Linwood Wright ("Wright" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court construes the amended petition and supporting memoranda of law as raising an ineffective assistance of counsel claim, premised on counsel's alleged deficient performance and an alleged conflict of interest.[1] For the reasons set forth more fully below, the petition is denied in its entirety.

## BACKGROUND

**I.      Procedural History**

On October 16, 1999, after a trial by jury, petitioner was convicted in the New York State Supreme Court, Kings County, of second degree murder and second degree reckless endangerment. He received a prison sentence of twenty-five years to life for the murder

---

[1] Petitioner initially filed the petition and amended petition seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 acting *pro se*. As a *pro se* litigant, petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). During the course of this litigation, petitioner retained counsel. Nevertheless, the court will interpret the petition and amended petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*emphasis omitted*). As set forth more fully below, the court construes the amended petition and supporting memoranda of law to raise a claim of ineffective assistance of counsel.

1

conviction, one year of imprisonment for the reckless endangerment conviction, and two and one-third to seven years of imprisonment for violating probation, to be served consecutively. Petitioner appealed the conviction, alleging that: (i) the trial court erred in denying his request for new counsel, and (ii) certain comments in the prosecutor's opening statement rose to the level of prosecutorial misconduct. (Resp. Ex. 1.) The Appellate Division of the New York State Supreme Court, Second Department, affirmed the judgment, holding that the trial court properly exercised its discretion in denying petitioner's request for new counsel, particularly on the eve of trial, and that the prosecutorial misconduct claim was unpreserved or lacked merit. *See People v. Wright*, 287 A.D.2d 526 (2d Dep't 2001). On December 27, 2001, the New York State Court of Appeals denied petitioner's application for leave to appeal. *See People v. Wright*, 97 N.Y.2d 689 (2001).

On October 8, 2002, petitioner, *pro se*, moved to vacate the judgment pursuant to New York State Criminal Procedure Law § 440.10 claiming: (i) ineffective assistance of counsel because his trial counsel failed to consult with him, sufficiently investigate the case, impeach eyewitness testimony, and request a *Rodriguez* hearing to examine an eyewitness's familiarity with the petitioner, and (ii) prosecutorial misconduct. The Kings County Supreme Court denied petitioner's motion. *See* March 20, 2003 Decision and Order, Indictment No. 7138/98. The court expressly held that petitioner's ineffective assistance of counsel claim was procedurally barred as he failed to raise it on direct appeal. The court additionally held that both claims lacked merit. The Second Department denied leave to appeal on August 8, 2003.

On September 19, 2003, petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry No. 1.) This *pro se* petition can be construed as alleging claims of (i) ineffective assistance of counsel for failure to investigate,

consult, call favorable witnesses, and to use impeachment evidence, and (ii) prosecutorial misconduct for knowingly using false testimony. On January 5, 2005, petitioner moved to stay all proceedings in the instant action, to permit him to exhaust a *Crawford* claim in state court, (Docket Entry No. 13), which request the court promptly granted (Docket Entry No. 15). In state court, petitioner then moved, *pro se*, to vacate his judgment of conviction, contending that the admission of statements made by the victim violated his Sixth Amendment right to confrontation as announced in *Crawford v. Washington*, 541 U.S. 36 (2004). The King's County Supreme Court denied petitioner's motion on October 7, 2005, and the Appellate Division, Second Department denied leave to appeal on March 31, 2006.

On May 30, 2006, petitioner moved, *pro se*, in the instant action for leave to amend his petition to include a *Crawford* claim. (*See* Am. Pet., Docket Entry No. 18.) The court re-opened the instant action, and granted petitioner's motion, thereby amending the petition to include the *Crawford* claim. (*See* June 9, 2006 Electronic Order.) Petitioner retained counsel on September 25, 2006. (Docket Entry No. 22.) For reasons unknown to the court, on April 4, 2007, petitioner filed a second motion to amend the petition, raising claims of ineffective assistance of counsel and prosecutorial misconduct claims. (Docket Entry No. 30.) The parties then submitted briefs, which the court struck for vastly exceeding the court's page limitations. (December 3, 2007 Electronic Order.) Additionally, the court warned petitioner that if he and his counsel failed to brief the prosecutorial misconduct claim a second time, the court would deem that claim abandoned. The parties submitted revised briefs, again limited to a discussion of the ineffective assistance of counsel claim. The court deems petitioner's prosecutorial misconduct claim abandoned, pursuant to the court's December 3, 2007 Electronic Order. Thus, the court will limit its review to the ineffective assistance of counsel claim.

## II. The Case Against Petitioner

On June 26, 1998, Jacob Allen was standing diagonally across the street from a barbershop located at 202 Jamaica Avenue, in Brooklyn, New York. (R. 493, 576.)[2] At trial, Allen testified that a Mazda MPV van pulled up outside of 202 Jamaica Avenue. (R. 496.) Wright exited the van, and it drove away. (R. 497.) Allen observed a heated exchange occur between Wright and the victim, Prescott Darren Desuze. (R. 497, 501.) Wright chased Desuze into the basement, and shortly thereafter, Allen heard gunshots and observed Wright fleeing. (R. 497.) As he ran from the basement, Allen noticed the handle of a handgun sticking out from Wright's belt. (R. 498, 503.) Allen did not go directly to the police after witnessing the incident as he thought other witnesses would come forward. (R. 506, 537-38.)

At approximately 7:15 p.m., Officers Thomas Perrone and Brian Maddaloni received a radio dispatch directing them to go to 202 Jamaica Avenue. (R. 442.) The officers arrived at the scene and found Desuze lying on the floor of the basement, with a gunshot wound to his chest. (R. 443.) Desuze told the officers individually, on two separate occasions, that petitioner shot him. (R. 445, 549.) Officer Perrone testified that when he asked Desuze who had shot him, Desuze said "Linwood." Officer Perrone then asked Desuze if Linwood Street was where the perpetrator lived as there was a street named Linwood near his precinct. (R. 445.) Desuze responded by saying "Linwood Wright." (*Id.*) Officer Maddaloni also testified that when he asked Desuze who shot him, Desuze identified Linwood Wright. (R. 549.)

Gary Allison, the barbershop owner, and Gregory Green, an employee, were also present in the basement of 202 Jamaica Avenue when the crime occurred. (R. 578, 606). Allison and

---

[2] "R." refers to the transcript of the trial held September 28, 1999 to October 6, 1999.

Green both heard shots but were unable to identify the shooter as they hid when the incident began. (R. 590-91, 609.) Green, too, was shot during this incident. (R. 610.)

At trial, petitioner denied that he was in New York on June 26, 1998, but admitted that he was in New York on June 25, 1998. (R. 767-68.) Petitioner testified that, on June 26, 1998, the day of the shooting, he was babysitting in Carlisle, Pennsylvania from early morning until the evening. (R. 769.) Petitioner then testified that he was at the home of Wayne Rideout in Pennsylvania for a couple of hours. (*Id*.) Rideout testified that petitioner visited his home around 11:00 p.m. on June 26, 1998, asked him to watch his van, and left after a couple of minutes. (R. 867-68.)

The police located and arrested petitioner in Carlisle, Pennsylvania on June 27, 1998. (R. 661.) The police found petitioner's MPV van and Buick car in Carlisle as well. (R. 643 and 650.) Petitioner was charged with Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and Reckless Endangerment in the Second Degree (N.Y. Penal Law § 120.20) for the murder of Desuze and the shooting and wounding of Green.

### III. Petitioner's Requests for New Counsel

On September 22, 1999, at the conclusion of testimony at a pre-trial suppression hearing, defense counsel, Joel Medows, informed the court for the first time that the petitioner wanted to hire new counsel. (H. 91.)[3] Petitioner informed the court that since his incarceration at Rikers Island in March 1999, he had only met with his attorney on three brief occasions and that his attorney did not have enough time to properly defend him. (H. 92.) The court told petitioner that his attorney had represented him "from the beginning and he's been here many, many, many times and I am sure he wants to speak to you." (H. 93.) The court denied petitioner's request for

---

[3] "H" refers to the transcript of a hearing held on September 22, 1999.

5

the substitution of counsel as there were no attorneys available and ready to proceed with the case. (*Id*.) The court provided petitioner the rest of the day to discuss matters with his attorney. (*Id*.) The court advised petitioner that if he retained an attorney who was ready, willing, and able to go to trial on the following Tuesday, the court would permit a substitution. (H. 94.) The court found that petitioner's request was "merely a delaying tactic at [that] point." On September 29, 1999, the second day of jury selection, petitioner had not retained new counsel, nor did he at any time during the trial. (R. 233-34.)

On October 4, 1999, amid trial, petitioner asked the judge whether he could address the court. (R. 563-64.) The Judge denied his request. However, petitioner persisted, indicating that what he needed to address was "very important." (*Id*.) The court dismissed the jury but before all of the jurors had exited the courtroom, petitioner blurted out that his counsel had not properly represented him and that the prosecutor encouraged a witness to commit perjury, which petitioner could prove. (R. 564.) The judge reminded Wright to remain silent until the jurors left the room. Outside the presence of the jurors, Wright then stated to the judge that:

> Mr. Medows is working along with [the prosecutor] to undermine me in winning this case. Ever since I have been incarcerated, I have been incarcerated six months in Rikers Island and not one time did this gentleman talk to me about this aspect not at all.
>
> . . . .
>
> I've been in this court three times and I'm already at trial and nobody told me when I was coming to trial. [Medows] referred to me like a dummy. He asked me do I know anything about basketball and the prosecutor is going to slam duck [sic] me. I feel that the prosecutor and him have kept things away from me proving my innocence. I'm talking about the 911 complaint calm [sic]. Somebody called the cops. That's number one.
>
> . . . .

> There is an on-scene investigation about what took place and I assure you that there were witnesses because Detective Powers the next day called, he talked to me and told me that there were witnesses and everything is conflicting with the witnesses - whatever the persons were that she brought up there to testify on the stand. They are saying that I'm sure it should be in the police report that there was no Mazda from the area and it was not me in the area.
>
> . . . .
>
> And I do not want this gentleman as my attorney and he is fired as of this minute.

(R. 565-66.) Petitioner also complained of counsel withholding information from him such as grand jury minutes, a police report, and crime scene investigation material. (R. 568-69.) The judge stated that she observed Medows conferring with petitioner at every point during jury selection. (R. 570.) The judge found that petitioner's comments were aimed at preventing the case from moving forward and denied his request to substitute counsel mid-trial. (R. 571.) Medows admitted that he never visited petitioner at Riker's Island but that he conferred with petitioner on more than one occasion in the court pens. (R. 572.)

## DISCUSSION

### I. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions, when state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs review of petitions challenging state convictions filed after 1996, such as this petition, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court-decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In the past, district courts were required to dismiss a state court prisoner's federal habeas petition if the prisoner failed to exhaust available state remedies as to his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A claim is considered exhausted, when a state court prisoner presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). Under the AEDPA, district courts now have the discretion to deny habeas petitions on the merits that contain unexhausted claims—so called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

District courts cannot, however, review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989).

## II. Application

### A. Procedural Bar

Petitioner first raised his claim for ineffective assistance of counsel in his *pro se* motion to vacate, filed pursuant to N.Y. C.P.L. § 440.10, on October 8, 2002. The state court rejected his claim as procedurally barred, noting that petitioner was in possession of the facts underlying this claim at the time of his direct appeal and, yet, petitioner failed to raise the claim. *See* March 20, 2003 Decision and Order, Indictment No. 7138/98. The court also held that the claim lacked merit. The Appellate Division, Second Department denied leave to appeal on August 8, 2003. This court cannot review this claim, which is procedurally barred, unless petitioner demonstrates both cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749-50. Petitioner has presented no evidence of cause and prejudice or that the denial of review of this claim will result in a fundamental miscarriage of justice. Petitioner cannot surpass the procedural bar to federal review of this claim. In any event, as set forth below, the claim lacks merit.

### B. Merits

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. The right to counsel is "the

right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The Supreme Court articulated the standards for evaluating whether counsel's representation falls below that contemplated by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a Sixth Amendment or *Strickland* claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id*. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *See Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

### 1. Counsel's Failure to Investigate

Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "Where the nature of the crime scene is material to the defense, counsel may be deemed ineffective for having failed to investigate it properly." *Thomas*, 255 F. Supp. 2d at 107.

Petitioner asserts that his attorney's failure to visit the crime scene amounts to ineffective assistance of counsel, as his attorney would have discovered evidence to impeach Allen had he

visited the crime scene. Petitioner contends that it was physically impossible for Allen to have observed that the Mazda MPV that dropped off petitioner at the crime scene had a Pennsylvania license plate as Pennsylvania only requires license plates on the back of cars, and Allen could not have seen the back of the car from where he stood. Petitioner cannot establish that his attorney's failure to investigate was material. It is likely that Allen observed the license plate on the van as it sped away and petitioner has not presented evidence that rules out this scenario. Allen did, in fact, testify that he saw the car drive away in a different direction. (R. 496, 498-99.) A visit to the crime scene to determine whether Allen could observe the license plate likely would bolster Allen's testimony, as it would demonstrate that Allen could have viewed the license plate as the van sped away. Notably, the visibility of the license plate does nothing to dispute the fact that Allen observed petitioner and not someone else exit the van, argue with Desuze, chase Desuze into the basement, emerge from the basement after the sound of gunshots with a gun attached to his waist, and run from the crime scene. The crime scene was not material to the defense, and defense counsel's failure to investigate does not make his performance deficient. The state court did not unreasonably apply federal law in denying this claim.

### 2. Counsel's Failure to Consult

Petitioner also alleges that counsel failed to consult with him. As a general matter, there is "no set rule for the number of times counsel must meet with a defendant." *Jones v. Conway*, 442 F. Supp. 2d 113, 126 (S.D.N.Y. 2006) (citing *United States ex rel. Testamark v. Vincent*, 496 F.2d 641, 642-43 (2d Cir. 1974). Petitioner asserts that, had counsel met with him more frequently, counsel would have learned of evidence that could be used to impeach Allen, namely, that Allen could not have observed the license plate from where he was located, and that Allen and petitioner did not attend school at the same time, despite Allen's testimony to the contrary. As set forth above, evidence of Allen's ability to observe the license plates as the van arrived is immaterial.

Similarly, it is immaterial whether Allen and petitioner attended school at the same time. Allen did not testify that they attended school together; rather, he testified that they were in different grades. He also testified that he had contact with petitioner outside of school as well. (R. 486, 489-90.) Petitioner's assertions, even if true, do not refute the thrust of Allen's testimony, which is that Allen knew petitioner for over ten years and frequently observed petitioner in the neighborhood and at school. Petitioner failed to demonstrate that his trial counsel's failure to consult with him would have altered his defense materially. Moreover, counsel indicated that he met with petitioner on several occasions and the trial court judge indicated that she observed trial counsel consulting with petitioner at every stage of trial. There is nothing deficient about trial counsel's consultations with petitioner. The state court did not unreasonably apply federal law in denying this claim.

### 3. Counsel's Cross-Examination of Allen

Petitioner contends that his trial counsel could have undermined Allen's credibility if he impeached Allen with his own prior statements and that the failure to do so amounts to ineffective assistance of counsel. In Allen's initial statement to the police, he did not mention the exchange of "words" between Desuze and Wright that occurred on the street prior to the shooting; however, at trial, he testified that Desuze and Wright had "words." (R. 497.) This alleged failure to impeach does not support a claim for ineffective assistance of counsel. The decision to impeach a witness on a particular set of facts "fall[s] squarely within the ambit of trial strategy, and, if reasonably made, cannot support an ineffective assistance claim." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (*internal quotation marks omitted*); *Bloomfield v. Senkowski*, 02-CV-6738, 2008 WL 2097423, *9 (E.D.N.Y. 2008) (denying an ineffective assistance of counsel claim premised on, among other things, a challenge to counsel's cross-examination of a witness). Moreover, the record demonstrates that counsel conducted an extensive cross-examination of Allen impeaching

him on several issues. There is nothing deficient about the cross-examination. The state court did not unreasonably apply federal law in denying this claim.

### 4. Counsel's Failure to Object to the Admission of the Victim's Statements

Wright claims that his attorney failed to move to preclude or to request a hearing regarding the admissibility of Desuze's statements identifying petitioner as the shooter and that the failure to do so amounts to the ineffective assistance of counsel. On September 29, 1999, the prosecution informed the court that they intended to admit Desuze's statement as a dying declaration. (R. 6-9.) Medows challenged the admissibility of the statement as a proper dying declaration or excited utterance. (*Id*.) Furthermore, Medows objected when Officers Maddaloni and Perrone testified that Desuze named Wright as his shooter. (R. 446, 549.) While Medows' objections were unsuccessful, he provided adequate counsel to petitioner in his attempts to preclude Desuze's dying declarations. Further, the state court did not err in admitting Desuze's statements. Desuze identified petitioner minutes after suffering what was ultimately a fatal gun shot to his chest. His statements were admissible as either a dying declaration or an excited utterance. *See* F.R.E. 804(b)(2); F.R.E. 803(2); *Ocasio v. Artuz*, 98-CV-7925 (JG), 2002 WL 1159892, *6 (E.D.N.Y. May 24, 2002) (holding that there was "no error, constitutional or otherwise," in admitting the statement of a victim that had been shot). The fact that Desuze later repeated this statement to other officers and medical personnel during periods of consciousness does not make his statement inadmissible. The state court's denial of petitioner's ineffective assistance of counsel claim is not an unreasonable interpretation of federal law. The state court did not unreasonably apply federal law in denying this claim.

### 5. Conflict of Interest

The Sixth Amendment right to counsel includes the right to conflict-free counsel. *See Strickland*, 466 U.S. at 692. If a defendant establishes that counsel labored under an actual

conflict, the defendant is entitled to a presumption of prejudice. *See United States v. White*, 174 F.3d 290, 295 (2d Cir. 2005). As a general matter, an attorney who defends herself against allegations raised by a defendant in support of a request for the substitution of counsel is not operating under a conflict of interest. *See id*. at 296. Otherwise, a defendant could create a conflict of interest "simply by expressing dissatisfaction with his attorney's performance." *Id*. "Substitution of assigned counsel during trial requires the defendant to show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Felder v. Goord*, 564 F. Supp. 2d 201, 06-CV-10223 (VM), 2008 WL 2588063, *12 (S.D.N.Y. Jun. 23, 2008) (*internal quotation marks omitted*) (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)). "The trial court's decision not to substitute counsel upon a defendant's request is reviewed under an 'abuse of discretion' standard, considering the following factors: (1) the timeliness of the defendant's motion; (2) the adequacy of the trial court's inquiry into the defendant's complaint about counsel; (3) whether the attorney/client conflict was so great that it had resulted in 'a total lack of communication preventing an adequate defense'; and (4) whether the defendant substantially and unjustifiably contributed to the communication breakdown. *Id*. at *12 (quoting *United States v. John Doe # 1*, 272 F.3d 116, 122-23 (2d Cir. 2001)).

Petitioner failed to establish that his Sixth Amendment right to counsel was violated because his attorney had a conflict of interest. Defendant first vocalized his dislike for counsel on the eve of trial.[4] The trial court informed him that he could retain new counsel, but that his new counsel needed to be prepared to proceed to trial the following week. At the next court appearance, petitioner attended with his court appointed counsel and did not protest counsel's

---

[4] Petitioner contends that we should not fault him for his timing as it was at that hearing that he first learned that his trial would begin and thus, he first learned of the urgency of his need for new counsel. The record suggests that he learned that his trial was approaching at earlier status conferences before the court. (*See* Resp. Mem. at 5-6.) Moreover, after the court gave petitioner time to find new counsel, he appeared with his assigned counsel and did not raise the issue again until mid-trial.

representation. Near the end of jury selection, the court reminded petitioner that if he intended to retain a new attorney, the attorney would need to be prepared to begin the trial shortly. Petitioner failed to retain new counsel and the trial commenced. Several days into the trial, petitioner yelled that "nobody told me when I was coming to trial." (R. 565.) Petitioner made numerous other claims and repeatedly called his counsel a liar. His attorney stated that he would not tolerate any abusive remarks from petitioner and defended his representation of petitioner. This heated exchange is not enough to establish a conflict of interest. *See White*, 174 F.3d at 295-97; *United States v. Patasnik*, 89 F.3d 63, 67 (2d Cir. 1996) (holding that the existence of friction between counsel and a defendant is not enough to create a conflict of interest). The facts do not demonstrate a total breakdown of communication between petitioner and his counsel; rather, the trial court observed that counsel communicated with petitioner at every stage of the trial. Further, the trial court's inquiry into petitioner's complaints was sufficient to support its denial of the substitution of counsel. Finally, it appears that the petitioner contributed to any friction between him and his counsel as it was petitioner who initiated a bitter tirade against his attorney in open court, while the jurors were present. Upon consideration of the totality of the circumstances, the court does not find that a conflict of interest existed between petitioner and his counsel. Further, the trial court did not err in denying petitioner's request for new counsel.

### 6. Prejudice

As set forth above, counsel's conduct was not deficient. Moreover, even if the court found counsel's conduct deficient, petitioner failed to establish prejudice. *See Strickland*, 466 U.S. at 694 (holding that a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Given the strength of the evidence against petitioner, the court is confident that, but for the alleged errors, the results

would not have been different. The state court did not unreasonably apply federal law in denying this claim.

## CONCLUSION

For the reasons set forth above, Linwood Wright's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336(2003); *Luciadore v. New York State Div of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED: Brooklyn, New York
         March 16, 2009

/s/
Dora L. Irizarry
United States District Judge